UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

NAOMI RODRIGUEZ,

Plaintiff,

vs.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

Case No: C 09-02803 SBA

**ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

[Dockets 26, 27]

Plaintiff filed the instant action seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant") under 42 U.S.C. § 405(g). Plaintiff alleges that she was improperly denied disability insurance benefits and supplemental security income. The parties are presently before the Court on Plaintiff's Motion for Summary Judgment (Dkt. 26) and Defendant's Cross-Motion for Summary Judgment (Dkt. 27). Having read and considered the papers submitted, and having reviewed the record, the Court hereby DENIES Plaintiff's motion and GRANTS Defendant's cross-motion.

## I. BACKGROUND

### A. FACTUAL SUMMARY

Plaintiff was born on May 14, 1966 and obtained a General Equivalency Degree in 1991. Administrative Record ("AR") 10. She has worked as an assistant manager in a retail/grocery store, where her duties included a range of managerial functions, such as training new employees, opening and closing the store, and related tasks. Id. She has also worked as a clerk typist, file clerk, customer service representative, and home health attendant. Id.

Plaintiff contends that she is disabled because of injuries to her right upper extremities, a traumatic brain injury, depression, anxiety, memory loss, pain, loss of concentration, asthma, diabetes, and high blood pressure. Id.

With regard to Plaintiff's medical and mental health history, records, dated June 7, 2001, from Downtown Physical Medicine and Rehabilitation in New York City reflect that Plaintiff suffered from right shoulder, forearm, elbow, wrist problems, and bilateral carpal tunnel syndrome. Id. In May 2004, Plaintiff underwent outpatient carpal tunnel release surgery on her right upper extremity. Id. 10 n.7. The ALJ noted that, at the time, Plaintiff weighed 262 pounds. Id.

In February 2002, Plaintiff was diagnosed with chronic headaches arising from a domestic violence incident where Plaintiff was "thrown into the wall" and hit her head against it. Id. 10 n.9. A resulting CT scan of Plaintiff's head showed a "small low density area subcorticial region left parietal occipital junction of uncertain etiology, possibly reflecting a resolving contusion." Id. The findings of the CT were "consistent with deep white matter disease," though the clinical (i.e., symptomatic) significance of that finding was not addressed. Id. She was regarded as "neurologically intact." Id. 10. At the time, high blood pressure (hypertension) was also noted though no symptoms were attributed to that condition. Id. 10-11.

Continuing to complain of headaches, Plaintiff was seen by neurologist Brian Smith, M.D., in August 2004. Id. 11. Dr. Smith noted that Plaintiff "has not been seen in the practice since her last visit" in October 2002. Id. He continued: "[s]he states she had actually done quite well and was almost headache free for a two year period. Her headaches returned approximately 6 months ago and have been occurring on a nearly daily basis since that time … she has only been taking Tylenol." Id. Dr. Smith concluded that Plaintiff's headaches were consistent with migraine, and an additional MRI examination of her head was ordered. Id.

In February 2006 medical records, chronic left ankle instability was noted, although its effects on Plaintiff were not discussed. Id. Four months later, after mowing the lawn, Plaintiff went to the doctor complaining of right hand pain. Id. De Quervain's tenosynovitis in her right hand was diagnosed, as was distal radial sensory nerve neuritis. Id. A cortisone injection was administered. Id.

In July 2006, Plaintiff was seen at the Holyoke Health Center. The provider there noted that Plaintiff reported she had been "losing weight and eating a much healthier diet …." Id. The provider further noted "[s]he is doing more exercise … [h]er asthma is doing fine. Her right hand is bothering her. It feels quite weak. She is in counseling." Id. It was also noted that Plaintiff's diabetes and hypertension were not adequately controlled, and medicine was prescribed to address those issues. Id.

A September 2006 report of Plaintiff's cognitive function from the Center for Traumatic Brain Injury (CTBI) Services of Western MA described the specific circumstances under which Plaintiff suffered her head trauma that led to her traumatic brain injury. Id. The report detailed the circumstances of Plaintiff's three marriages, and observed that Plaintiff was having difficulties with her son, severe enough to result in her seeking and obtaining a restraining order against him for alleged emotional and physical abuse. Id. When personnel from CTBI visited Plaintiff's house, they found it in a "slovenly state." Id. The report reflected that Plaintiff prepared her own meals and cleaned her clothes, although right carpal tunnel syndrome gave her some problems with these tasks. Id. She was also shown to be capable of shopping on her own, albeit slowly. Id. Plaintiff indicated that she did not have a valid driver's license and could use public transportation, but with some difficulties. Id. at 12. Although Plaintiff indicated having few social relationships outside of her immediate family, Plaintiff appeared to have "a sense of humor and is quite pleasant to talk with …. Ms. Rodriguez has demonstrated self-advocacy skills in expressing her desire to be employed." Id. She went shopping with CTBI personnel to a mall and performed normally except for stating that she "was unable to read signs because it was overwhelming." Id. The report contained no indication that Plaintiff was unable to work. Id.

Constance Carpenter, Ph.D., a clinical neuropsychologist who "consultatively examined" Plaintiff on one occasion in March 2005, opined in December 2006 that Plaintiff would not be able to engage in work in order to support herself financially, due to "executive processing impairments that Ms. Rodriguez has in the management of her day-to-day life." Id. The ALJ noted that "[t]his conclusion was arrived at despite the examiner's findings that the

claimant was 'Currently Average Range in overall ability, with relative strengths in vocabulary, verbal reasoning, and speed of processing' … [and that] [h]er 'visual learning and memory are excellent.'" Id. 12 n.22. Dr. Carpenter also noted that in 2004, Plaintiff attended courses at community college, but could not keep up with the pace of the courses. Id. 12.

A report, dated May 4, 2006, from a therapist, Christine Ledoux, M.Ed., observed that Plaintiff suffered from adjustment disorder with depressed mood, and noted that, due to the effects of her brain injury, her memory and comprehension were compromised. Id. 13. However, the therapist assessed Plaintiff with a global assessment of functioning score (GAF) of 68. Id. According to the ALJ, "a GAF score of 68 indicates that the claimant has some mild symptoms which affect occupational functioning, but, in general, she is functioning pretty well." Id. 13 n.24.

In January 2007, an initial psychiatric evaluation of Plaintiff was performed at the Carson Center for Adults and Families. Id. 13. The report noted that Plaintiff was "hoping to get full-time work and is considering moving to San Francisco in the near future to do so," and that Plaintiff "reported that, recently, depression and anxiety had not been severe." Id. The psychiatrist from the Carson Center who performed the evaluation, SuEllen Hamkins, M.D., diagnosed Plaintiff with post traumatic stress disorder and adjustment disorder with depression. Id.

On January 18, 2007, a physician's assistant working in the Neurology Division of Baystate Medical Center noted that Plaintiff still suffered from headaches but said that "[f]rom a headache point of view, Mrs. Rodriguez feels much better. She feels the headaches are less severe and less frequent." Id. Subsequently, in June 2007, Plaintiff was seen by Elizabeth Perry, M.D., a physician located in San Francisco, who noted that, due to Plaintiff's brain injury, she "cannot retain short term memory with any confidence which impairs her ability to concentrate and limits her social function to some degree." Id.

On December 19, 2008, Simone Schlick, a Service Coordinator for the Janet Pomeroy Center in San Francisco, part of the San Francisco Traumatic Brain Injury Network (SFTBI), wrote a letter to Plaintiff's counsel indicating that Plaintiff had been a client of SFTBI since

May 2007. Id. 13-14. Ms. Schlick indicated that it was her perception that Plaintiff is unable to work. Id. 14. Ms. Schlick further indicated that she "helped Ms. Rodriguez file for an SSI/SSDI hearing and apply for Medi-Cal" and described how Plaintiff was able to find and participate in volunteer work. Id. She noted that Plaintiff was enrolled as a student in South University's online paralegal program and was taking classes part time, though these classes required Plaintiff's entire energy and mental stamina. Id.

### B. PROCEDURAL HISTORY

Plaintiff applied for Social Security Disability Insurance Benefits ("SSDI") and Supplemental Security Income ("SSI") on August 15, 2006. AR 145-157. She was initially denied benefits on October 16, 2006. AR 89-91. Plaintiff contended that she was disabled due to the following: posttraumatic stress disorder; traumatic brain injury; cognitive disorder; memory disorder; depression; anxiety; diabetes; right knee impairment; and carpal tunnel syndrome. Plaintiff requested a hearing after being denied at the initial level and by the Federal Reviewing Official. AR 82-88, 95-100. Administrative Law Judge Leonard Cooperman ("ALJ") held a video hearing on January 5, 2009, at which Plaintiff was represented by counsel. AR 19.

On January 30, 2009, the ALJ issued a decision denying SSDI/SSI benefits to Plaintiff. AR 4-18. In that decision, the ALJ found that although Plaintiff had sever impairments consisting of posttraumatic stress disorder, depression/adjustment disorder, anxiety, migraine heachaches, carpal tunnel syndrome, and obesity, she did not have impairments that either met or equaled one in the Listing of Impairments. AR 4-8. The ALJ found that Plaintiff's complaints were not fully credible, and that she could perform a number of unskilled jobs in the occupations of library aide, cafeteria worker, and laundry worker, given her residual functioning capacity ("RFC") for a reduced range of unskilled light work. AR 16-18. On May 1, 2009, the Decision Review Board affirmed the ALJ's decision. AR 1-3. On June 23, 2009, Plaintiff commenced this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

The parties have filed cross-motions for summary judgment. Plaintiff seeks a remand based on the following claims: (1) the ALJ failed to fully develop the record by not scheduling Plaintiff for a neuropsychological evaluation; (2) the ALJ erred in rejecting the opinion of Plaintiff's treating neuropsychologist, Constance Carpenter, Ph.D.; and (3) the ALJ erred in rejecting the lay witness evidence provided by Simone Schlick.[1]

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court has authority to review a Commissioner's decision to deny disability benefits to a claimant. The Court's review is limited to an adjudication of whether the Commissioner's findings are supported by substantial evidence and based upon the proper legal standards. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). Substantial evidence is more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Desrosiers v. Sec. of HHS, 846 F.2d 573, 575-76 (9th Cir. 1988). The Court must "review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

## III. ANALYSIS

In order to qualify for disability benefits, a plaintiff must prove she has a disability, which is defined under the Social Security Act as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); see also Stout v. Commissioner, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The ALJ follows a five-step sequential analysis to determine whether a claimant is in fact disabled:

[1] The Court notes that Plaintiff did not file a reply brief in support of her motion or an opposition brief in response to Defendant's cross-motion.

1. Is the claimant currently engaged in substantial gainful activity, i.e., working? If the answer is yes, the inquiry ends and the claimant is not disabled.

2. Does the claimant have a severe impairment? If the answer is yes, the inquiry proceeds to question 3.

3. Does the severe impairment equal one of the listings in the regulation known as Appendix 1 (the Listing of Impairments found at 20 C.F.R. Pt. 4, Subpt. P, App. 1)? If so, the claimant is disabled. If not, the inquiry proceeds to question 4.

4. Can the claimant still perform her past relevant work? If so, the claimant is not disabled. If not, the agency must assess the claimant's residual functional capacity.

5. Considering the claimant's residual functional capacity, age, education, and work experience, is there other work the claimant can do? If so, the claimant is not disabled. See Parra, 481 F.3d at 746; 20 C.F.R. §§ 404.1520, 416.920.

The claimant carries the initial burden of proving a disability in steps one through four. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). If the claimant carries her initial burden, the burden shifts to the Commissioner to establish that the claimant can perform a significant number of other jobs in the national economy. Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002). The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. Id. If the Commissioner meets this burden, the claimant has failed to establish disability. Id. If a claimant is found to be "disabled" or "not disabled" at any step in the sequence, there is no need to consider subsequent steps. See Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005).

### A. THE ALJ'S ALLEGED FAILURE TO FULLY DEVELOP THE RECORD

"In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). Nevertheless, it is the claimant's duty to prove that she is disabled. Id.; citing 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes

such medical and other evidence of the existence thereof as the Secretary may require"). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Id. at 459-460.

Here, Plaintiff requested in her brief to the ALJ that he consider scheduling her for a Social Security consultative neuropsychological evaluation because none had been undertaken. AR 220-222. Plaintiff asserts that "the only evaluations of Plaintiff's mental health were a 2006 letter from a treating neuropsychologist referring to her own earlier evaluation from 2005 which was not included in the file" and "a brief initial psychiatric evaluation from January 2007." Pl.'s Mot. 7 (citing AR 568, 600-602).

Title 20, Section 416.912 of the Code of Federal Regulations provides:

> Need for consultative examination. If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense. See §§ 416.917 through 416.919t for the rules governing the consultative examination process. Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources. However, in some instances, such as when a source is known to be unable to provide certain tests or procedures or is known to be nonproductive or uncooperative, we may order a consultative examination while awaiting receipt of medical source evidence. We will not evaluate this evidence until we have made every reasonable effort to obtain evidence from your medical sources.

20 C.F.R. § 416.912.[2]

Here, the ALJ's decision to reject Plaintiff's request for a consultative examination was not in error. The record submitted contained sufficient medical evidence about Plaintiff's impairments, including her claimed brain injury, for the ALJ to determine whether she was disabled. There is no evidence in the record indicating that any of Plaintiff's medical providers was unable to provide relevant information or was uncooperative. Indeed, the ALJ was

[2] The code section referenced in Section 416.912 – Section 416.917 – states: "If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests." 20 C.F.R. § 416.917.

provided with and considered the records of several medical providers with respect to Plaintiff's brain injury and/or resulting impairments. Those records were from February 2002 (AR 10), August 2004 (AR 11), September 2006 (AR 11), December 2006 (AR 12), May 2006 (AR 13), January 2007 (AR 13), and June 2007 (AR 13). Put simply, there is no indication that the record was ambiguous or inadequate so as to necessitate a consultative examination.

### B. THE OPINION OF CONSTANCE CARPENTER, PH.D.

Plaintiff further asserts that the ALJ erred in not giving "controlling or significant" weight to the opinion of Dr. Carpenter, who Plaintiff characterizes as one of her "treating physicians." When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). Greater weight must be given to the opinion of treating physicians, and in the case of a conflict "the ALJ must give specific, legitimate reasons for disregarding the opinion of the treating physician." Id.

In this case, these rules were followed because the ALJ gave specific and legitimate reasons to discount the opinion of Dr. Carpenter on the degree of Plaintiff's impairment. Specifically, the ALJ gave the opinion "little weight because it is (1) based on a single opportunity to examine the claimant, and, more importantly (2) is inconsistent with the majority of the evidence, and (3) appears internally inconsistent." AR 12. In response, Plaintiff contends that the ALJ was incorrect in stating that Dr. Carpenter's opinion was based on a single opportunity to examine her, as "Dr. Carpenter evaluated plaintiff in March 2005 and, since that time, in her role as consulting neuropsychologist, had the opportunity to directly observe plaintiff and learn about her from her case manager." Pl.'s Mot. 8; AR 568. However, the record shows that Dr. Carpenter examined Plaintiff only once, and that examination occurred in 2005. AR 568. Moreover, Plaintiff has not contradicted the ALJ's findings that Dr. Carpenter's opinion was inconsistent with the majority of the other evidence and was internally inconsistent. In particular, Dr. Hamkins and Ms. Ledoux, M.Ed. found that Plaintiff's mental and cognitive functioning were not as limited as Dr. Carpenter found. AR 13.

In sum, the ALJ gave specific, legitimate reasons for discounting the opinion of Dr. Carpenter in favor of the other evidence in the record. As such, the ALJ did not err in giving minimal evidentiary weight to Dr. Carpenter's opinion.

### C. THE LAY WITNESS EVIDENCE PROVIDED BY SIMONE SCHLICK

Lastly, Plaintiff contends that the ALJ erred in discounting the lay opinion of Ms. Schlick. While an ALJ must take into account lay witness testimony about a claimant's symptoms, the ALJ may discount that testimony by providing "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); see also Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996). Generally, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the agency. Parra, 481 F.3d at 750.

Here, the ALJ found that "[t]o the extent Ms. Schlick's opinion is inconsistent with my assessment of the claimant's residual functional capacity. (sic) Her credentials to opine on the claimant's vocational capacity are meager, her impartiality is suspect and I therefore give her opinion as to the claimant's employability, to the extent she expressed one, little weight." AR 14. The ALJ further noted that "[i]t appears that Ms. Schlick is functioning as the claimant's advocate, having suggested that the claimant seek SSI-SSDI." AR 14 n.31. The ALJ's reasons for doubting Ms. Schlick's credibility are germane to her; accordingly, it was not error for the ALJ to disregard her testimony. See e.g. Crane, 76 F.3d at 254 (finding that ALJ properly discounted law witness testimony as "suspect" because the witness had helped the claimant apply for benefits and, as an advocate for the claimant, the witness was not objective).

## IV. CONCLUSION

For the above stated reasons,

IT IS HEREBY ORDERED THAT Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Cross-Motion for Summary Judgment is GRANTED. The Clerk shall close this file and terminate all pending matters.

IT IS SO ORDERED.

Dated: September 27, 2010

SAUNDRA BROWN ARMSTRONG
United States District Judge